UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
JOSHUA SEPARZADEH,                        :     15 Civ. 8643 (AT) (JCF)
                                          :
                 Plaintiff,               :        MEMORANDUM
                                          :     AND   ORDER
     - against -                          :
                                          :
ICONIX BRAND GROUP, INC.; ROC             :
APPAREL GROUP LLC; MARRIED TO THE         :
MOB, INC.,                                :
                                          :
                 Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

```
┌─────────────────────────────┐
│ USDS SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____    │
│ DATE FILED: 10/19/16        │
└─────────────────────────────┘
```

     The plaintiff, Joshua Separzadeh, brings this action against

Iconix Brand Group, Inc. ("Iconix"), Roc Apparel Group LLC ("RAG"),

and Married to the Mob, Inc. ("MTTM") for copyright infringement.

The plaintiff has moved for leave to file an amended complaint to

add Diana Gerich, Leah McSweeney, LCM Productions Inc. ("LCM"),

Multi-Century Company, Ltd. ("MCC"), and Kier, LLC ("Kier") as

defendants.  For the following reasons, the motion is granted in

part and denied in part.

Background

     The plaintiff is a photographer and is the owner of the

copyrighted photograph "Grillz (Crunkstep II)."  (Complaint

("Compl."), ¶¶ 6, 15-16).  Iconix owns and manages the "Rocawear"

clothing brand, and RAG produces and sells Rocawear merchandise.

(Compl., ¶¶ 9-11).  According to the complaint, Iconix and RAG

sold two clothing items under the Rocawear brand -- the "Grillz Tee" and the "Grillz Hoodie" -- containing unauthorized derivatives of the plaintiff's photograph.  (Compl., ¶¶ 17-18). MTTM, through the Married to the Mob brand, also sold two products -- "Slugz Cropped Crewneck" and "Slugz Tee" -- containing derivatives of the plaintiff's photograph.  (Compl., ¶¶ 21-22). All defendants allegedly profited from the unauthorized use of the plaintiff's photograph.  (Compl., ¶ 23).

In the amended complaint, the plaintiff now contends that Ms. McSweeney operates LCM, Kier, and MTTM to sell the Married to the Mob infringing merchandise, and that MCC reproduces and distributes this unauthorized merchandise.  (First Amended Complaint, attached as Exh. 1 to Notice of Motion for Leave to Amend the Complaint ("Amend. Compl."), ¶¶ 16, 18, 45).  Ms. Gerich allegedly designed the merchandise at issue.  (Amend. Compl. ¶ 20).

The plaintiff filed the original complaint on November 3, 2015, alleging copyright infringement against the defendants and vicarious copyright infringement against Iconix.  A scheduling order, filed January 26, 2016, ordered that motions to amend or join parties be made within thirty days.  (Civil Case Management Plan and Scheduling Order dated Jan. 26, 2016, ¶ 3). The plaintiff moved to amend the complaint on May 11, 2016.  Since that filing did not comply with the individual rules of the Honorable Analisa

Torres, U.S.D.J., Judge Torres denied the motion without prejudice on June 15, 2016.  The plaintiff again moved to amend on June 17, 2016.  Only MTTM opposes the motion.

Discussion

If a motion to add a party is made after the deadline imposed by a scheduling order, Rules 15(a)(2), 16(b)(4), and 21 of the Federal Rules of Civil Procedure apply.  See International Media Films, Inc. v. Lucas Entertainment, Inc., No. 07 Civ. 1178, 2008 WL 781823, at *1-3 (S.D.N.Y. March 20, 2008).

Although Rule 21 technically applies to the addition of parties, courts apply "the same standard of liberality afforded to motions to amend pleadings under Rule 15." Bridgeport Music, Inc. v. Universal Music Group, Inc., 248 F.R.D. 408, 412 (S.D.N.Y. 2008) (quoting Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980)). However, where "a scheduling order governs amendments to the complaint, 'the lenient standard under Rule 15(a), which provides leave to amend "shall be freely given," must be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause."'" Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (citation omitted) (quoting Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003)); see also Parker v. Columbia Pictures Industries, 204 F.3d 326, 340 (2d Cir. 2000).

Rule 15(a)(2) states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005). The district court has broad discretion over motions to amend. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). A motion to amend may be denied for any of the following reasons: (1) undue prejudice to the non-moving party, (2) futility, (3) bad faith or dilatory motive, (4) repeated failure to cure deficiencies by previous amendments, and (5) undue delay. Holmes, 568 F.3d at 334; see also Foman, 371 U.S. at 182.

Rule 16(b)(4) states, "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether good cause exists depends upon the diligence of the moving party. Grochowski, 318 F.3d at 86; Motorola Solutions, Inc. v. Xerox Business Services, LLC, No. 14 Civ. 206, 2016 WL 2889057, at *3 (S.D.N.Y. May 17, 2016). Diligence can be found where, "despite the movant's efforts, the deadline to amend the pleadings could not have been reasonably met." Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (citing Parker, 204 F.3d at 340). A party is not diligent when information that was previously publicly available would have been a sufficient basis for amendment. See Infinity Headwear & Apparel, LLC v. Jay

4

Franco & Sons, Inc., No. 15 Civ. 1259, 2016 WL 5372843, at *6 (S.D.N.Y. Sept. 26, 2016) (finding good cause where information was not publicly available); De Malmanche v. Glenrock Asset Management Associates, L.P., No. 07 Civ. 10940, 2011 WL 990165, at *5 (S.D.N.Y. March 16, 2011) (holding no good cause where amendment information available online in FSA Register, and "a simple due diligence inquiry" would have disclosed it).  A court may also consider "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

"The burden of demonstrating good cause rests with the movant."  Scott, 300 F.R.D. at 198.  The burden of showing futility or prejudice is on the non-moving party.  See Allison v. Clos-ette Too, L.L.C., No. 14 Civ. 1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

A.   Good Cause

1.   LCM and McSweeney

The plaintiff argues he had little reason to know that LCM and Ms. McSweeney were involved in the infringement by the Married to the Mob brand prior to the deadline set forth in the scheduling order.  The plaintiff claims that infringing material was sold on the Married to the Mob website, and -- since there was no owner listed on either the current version of the website or the version

displayed on November 1, 2015[1] -- the plaintiff previously concluded that MTTM controlled the merchandise on the Married to the Mob website.  (Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion to Amend ("Reply") at 5); Declaration of Nathaniel Kleinman dated June 2, 2016 ("6/2/16 Kleinman Decl."), ¶ 4 (stating that he "reasonably believed that [MTTM], an active New York corporation . . ., was the owner and operator of 'Married To The Mob' website on which Plaintiff's photograph was unlawfully displayed")).  The plaintiff contends he could not have known of other proper defendants.  (Reply at 5).

There was some reason to know that LCM and Ms. McSweeney were proper defendants prior to the deadline.  First, the plaintiff shows only that MTTM is an active corporation that shares a name with the Married to the Mob website, not that it is the owner of the website or the merchandise sold online.  (6/2/16 Kleinman Decl., ¶ 4).  MTTM presents evidence that shows that Leah McSweeney is the public domain owner of mttmnyc.com.  (ICANN WHOIS Search, attached as Exh. I to Declaration of Ira Sacks dated July 1, 2016 ("7/1/16 Sacks Decl.")).  Furthermore, the plaintiff admits that information demonstrating that Ms. McSweeney is involved in

---

[1]  November 1, 2015, is the closest date preceding the filing of the original complaint for which a snapshot is available, and it is available at http://web.archive.org/web/20151101131656/. The current website is available at http://mttmnyc.com/.

Married to the Mob apparel designs was publically available prior to the filing of the original complaint. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Amend the Complaint ("Pl. Memo.") at 4; Declaration of Nathaniel Kleinman dated May 11, 2016, ¶ 7 (discussing online articles "related to Leah McSweeney's Role as founder and CEO of MTTM")).

Additionally, MTTM argues that a search of the United States Patent and Trademark Office website would have shown that MTTM Worldwide, LLC, and LCM have been registered owners or assignees of the mark "Married to the Mob." (Married to the Mob Trademark Search, attached as Exh. B to Declaration of Ira Sacks dated May 25, 2016 ("5/25/16 Sacks Decl."); Trademark Assignment dated March 8, 2011, attached as Exh. C to 5/25/16 Sacks Decl.). Finally, MTTM's counsel sent a cryptic message to plaintiff's counsel indicating that he had named the "wrong defendant." (Reply at 4).

Nevertheless, this information does not preclude a finding of good cause. The purpose of Rule 16(b)(4) is to expedite cases and pretrial matters. Christians of California, Inc. v. Clive Christian New York, LLP, No. 13 Civ. 275, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) ("The scheduling order and the good cause requirement for altering it are simply administrative tools to facilitate efficient case management . . . ."). "The Federal Rules reject the approach that pleading is a game of skill in which one

misstep by counsel may be decisive to the outcome and accept the
principle that the purpose of pleading is to facilitate a proper
decision on the merits." <u>Affiliated FM Insurance Co. v. Liberty
Mechanical Contractors, Inc.</u>, No. 12 Civ. 5160, 2013 WL 4526246,
at *6 (S.D.N.Y. Aug. 27, 2013) (quoting <u>Foman</u>, 371 U.S. at 181-
82).  The scant data available provided an insufficient basis for
a claim against an obscure corporation.  Even though LCM might
have owned the mark "Married to the Mob," this does not necessarily
mean that it sold or created the infringing material.  Similarly,
even if Ms. McSweeney was heavily involved in the Married to the
Mob brand, she was not necessarily implicated in the infringement.
Rather, it was not until the plaintiff received new information
from settlement-related discovery that he understood that LCM and
Ms. McSweeney where directly involved in the infringement.  (Pl.
Memo. at 1, 4-5).

     2.   <u>Kier</u>

     Ms. McSweeney transferred the Married to the Mob mark from
LCM to Kier on February 17, 2016, which was immediately prior to
the deadline for amendment.[2]  (7/1/16 Sacks Decl., ¶ 6; Kier
Assignment).  The plaintiff simply did not have sufficient time to
investigate the transfer in order to move to amend prior to the

---

     [2]   Ms. McSweeney also accepted the assignment on Kier's
behalf.  (Trademark Assignment ("Kier Assignment"), attached as
Exh. D to 7/1/16 Sacks Decl.)).

deadline.

  3. <u>Gerich and MCC</u>

  The plaintiff was provided with settlement-related discovery immediately before the deadline for amendment, and that discovery ultimately provided the plaintiff with the basis to seek an amendment to add Ms. Gerich and MCC. (Pl. Memo. at 1; Reply at 8). The delay between obtaining the material and bringing the motion is excusable. See <u>Infinity Headwear</u>, 2016 WL 5372843, at *6 ("[The plaintiff's] actions during the almost seven months following that deadline evince a diligence to confirm its suspicions and act with all due haste to file the present motion for leave to amend."). Accordingly, the plaintiff has demonstrated good cause for modifying the scheduling order to permit him to move now to amend the complaint to add these defendants.

  4. <u>Admissibility of Settlement Deliberations</u>

  The defendant argues that amendment should be barred since the proposed amendments are based in part on information disclosed during settlement. (Memorandum of Law of Defendant Married to the Mob, Inc. in Opposition to Motion for Leave to Amend Complaint ("MTTM Memo.") at 14-15).

  "If the challenged [allegations] in fact relate[] to settlement discussions, then such amendment would arguably be futile because they could be stricken under Rule 12(f) [as

inadmissible at trial under Rule 408 of the Federal Rules of Evidence]" <u>Yankelevitz v. Cornell University</u>, No. 95 Civ. 4593, 1997 WL 115651, at *4 (S.D.N.Y. March 14, 1997). This principle is most germane when a complaint quotes or references settlement discussions. <u>See</u> <u>id.</u> at *4-5; <u>B.W.P. Distributors, Inc. v. OE Plus, Ltd.</u>, No. 07 Civ. 9588, 2009 WL 1154102, at *10 (S.D.N.Y. March 31, 2009); <u>Philadelphia's Church of Our Savior v. Concord Township</u>, No. Civ. A. 03-1766, 2004 WL 1824356, at *3 (E.D. Pa. July 27, 2004). However, a motion to strike will be denied, "unless it can be shown that no evidence in support of the allegation would be admissible." <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976). Motions to strike are disfavored, especially if it is unclear whether there is evidence to support an allegation. <u>B.W.P.</u>, 2009 WL 1154102, at *9; <u>Yankelevitz</u>, 1997 WL 115651, at *5.

In this case, the amended complaint makes no mention of statements made during settlement. Although it appears that information obtained during settlement gave the plaintiff cause to amend the complaint, the new allegations can likely be proven through other information.

The defendant also appears to argue that statements made for settlement purposes should not be used in deciding whether to allow amendment. (MTMM Memo. at 15). But Rule 408 only bars evidence

if it is used to prove liability, invalidity of a claim, or the amount of damages; it does not exclude evidence that is offered for another purpose.  <u>PRL USA Holdings, Inc. v. U.S. Polo Association, Inc.</u>, 520 F.3d 109, 113 (2d Cir. 2008).  Since the plaintiff is merely trying to show good cause to amend, Rule 408 is no impediment.

  B.  <u>Futility</u>

  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." <u>Dougherty v. Town of North Hempstead Board of Zoning Appeals</u>, 282 F.3d 83, 88 (2d Cir. 2002); <u>accord</u> <u>AEP Energy Services Gas Holding Co. v. Bank of America, N.A.</u>, 626 F.3d 699, 726 (2d Cir. 2010). Thus, the court must accept all facts pled as true and construe them in the light most favorable to the plaintiff.  <u>See</u> <u>Panther Partners Inc. v. Ikanos Communications, Inc.</u>, 681 F.3d 114, 119 (2d Cir. 2012); <u>Alexander Interactive, Inc. v. Adorama, Inc.</u>, No. 12 Civ. 6608, 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014).

  1.  <u>Alter Ego Claim</u>

  The proposed amended complaint's theory of liability against Kier, LCM, and MTTM is based, in part, on allegations that these companies are alter egos of Ms. McSweeney.  (Amend. Compl., ¶¶ 40-43).  It is well established that a plaintiff "may not rely on conclusory statements, but must allege specific facts" showing

alter ego liability.  Sysco Food Service of Metro New York, LLC v. Jekyll & Hyde, Inc., No. 08 Civ. 2958, 2009 WL 4042758, at *3 (S.D.N.Y. Nov. 17, 2009).  There are at least ten factors relevant to the analysis:

> (1) whether corporate formalities are observed, (2) whether the capitalization is adequate, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) whether there is overlap in ownership, officers, directors, and personnel, (5) whether the corporate entities share common office space, address and telephone numbers, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the alleged dominator deals with the dominated corporation at arms length, (8) whether the corporation is treated as an independent profit center, (9) whether others pay or guarantee debts of the dominated corporation, and (10) whether the corporation in question had property that was used by the alleged dominator as if it were the dominator's own.

American Fuel Corp. v. Utah Energy Development Co., 122 F.3d 130, 134 (2d Cir. 1997).  The plaintiff alleges that Ms. McSweeney is the sole owner and decision maker of Kier, LCM, and MTTM, and that she has full control and authority over designs, production, marketing, and sales of MTTM products.  (Amend. Compl., ¶ 41). The plaintiff further asserts that Ms. McSweeney, through these entities, ratified Ms. Gerich's design.  (Amend. Compl., ¶ 42). These allegations are insufficient, as the plaintiff must allege more specific facts to sufficiently plead alter ego liability. See Vista Food Exchange, Inc. v. Champion Foodservice, L.L.C., No. 14 Civ. 804, 2014 WL 3857053, at *9 (S.D.N.Y. Aug. 5, 2014)

(allegations satisfying one of ten alter ego factors insufficient for alter ego liability); Lewis v. White, No. 08 Civ. 7480, 2010 WL 6465230, at *6 (S.D.N.Y. July 1, 2010) (rejecting alter ego theory alleging only that defendant owned and oversaw "entire operation" of corporation); Favour Mind Ltd. v. Pacific Shores, Inc., No. 98 Civ. 7038, 2004 WL 97649, at *5 (S.D.N.Y. Jan. 20, 2004) (rejecting alter ego theory alleging only (1) use of corporation for personal business and (2) "complete domination" by defendant).  The plaintiff's alter ego theory is thus futile.

### 2.   Secondary Copyright Infringement Claims

The proposed amended complaint also alleges contributory infringement against MTTM and the proposed additional defendants.[3] (Amend. Compl., ¶¶ 53-57).  "To state a claim for contributory infringement, a plaintiff must allege facts that a defendant 'with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another . . . .'" Rams v. Def Jam Recordings, Inc., ___ F. Supp. 3d ___, ___, 2016 WL 4399289, at *3 (S.D.N.Y. 2016) (alteration in original) (quoting Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).  MTTM contends that the contributory copyright infringement claims are

---

[3]   The original complaint alleges secondary infringement claims only against Iconix.  (Compl., ¶¶ 33-37).

futile, as the plaintiff has not "alleged any notice of copyright protection at the time of the alleged unauthorized copying." (MTTM Memo. at 13). MTTM seems to argue that a defendant must have knowledge that the activity complained of infringes on an existing copyright. However, all that is required is knowledge of the activity that allegedly infringes. See Rams, 2016 WL 4399289, at *3. The plaintiff alleges that the "MTTM Defendants materially contributed to, encouraged, and/or induced the direct infringement of Plaintiff's copyright."[4] (Amend. Compl., ¶ 54). He also alleges that Ms. McSweeney "actively and knowingly participated in the infringing conduct." (Amend. Compl., ¶ 43). That is sufficient.

MTTM also asserts that the vicarious infringement claims against Ms. McSweeney and Kier are futile since they have no direct financial interest in the exploitation of the allegedly infringing materials. (MTTM Memo. at 14). "[T]to state a claim for vicarious infringement, a plaintiff need only allege that a defendant has declined to exercise the right and ability to supervise or control the infringing activity and enjoys a direct financial benefit from the infringing activity." Rams, 2016 WL 4399289, at *4. "The financial benefit need not be tied directly to sales of the

---

[4]   The proposed amended complaint refers to Ms. McSweeney, MTTM, LCM, and Kier collectively as "the MTTM Defendants." (Amend. Compl., ¶ 19).

14

infringing goods, nor must it be substantial." <u>Id.</u> at *5
(citations omitted).  The plaintiff here alleges that the "MTTM
Defendants benefited financially from the unauthorized copying of
Plaintiff's Photography." (Amend. Compl., ¶ 58).  He also alleges
that Ms. McSweeney had full control over the products and actively
participated in the infringing conduct.  (Amend. Compl., ¶¶ 42-
43).  Thus, the plaintiff has sufficiently alleged a vicarious
liability claim.[5]

### 3.   Statutory Damages and Attorneys' Fees

MTTM argues that the plaintiff should be barred from seeking
statutory damages, attorneys' fees, and costs because the alleged
infringement occurring after the registration of the copyright was
"part of an ongoing series of infringing acts and the first act
occurred before registration." (MTTM Memo. at 11-12 (quoting <u>U2
Home Entertainment, Inc. v. Hong Wei International Trading, Inc.</u>,
No. 04 Civ. 6189, 2008 WL 3906889, at *15 (S.D.N.Y. Aug. 21,
2008))).  While the defendant has accurately stated the law, this
argument is premature since it applies to the relief requested,
not to whether a claim is stated.

---

[5]   In a footnote, MTTM claims that its arguments regarding
secondary liability are applicable to Ms. Gerich (whom they "do
not represent"). (MTTM Memo. at 14, n.8).  However, the plaintiff
does not assert the secondary claims against her. (Amend. Compl.,
¶¶ 19, 49-59).

C.   Prejudice

Undue prejudice arises "when an amendment [comes] on the eve of trial and would result in new problems of proof," Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (alteration in original) (quoting State Teachers Retirement Board v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)), or when defending against it would compel a litigant to expend significant additional resources, AEP Energy, 626 F.3d at 727.

MTTM's only argument is that it has expended legal fees defending the lawsuit and will have to expend more if additional parties are added.  (MTTM Memo. at 17).  However, mere "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." A.V.E.L.A. v. Estate of Monroe, 34 F. Supp. 3d 311, 318 (S.D.N.Y. 2014).  MTTM has not shown that any additional expenditure of resources here would be significant.

Conclusion

For the reasons discussed above, the plaintiff's motion to amend (Docket No. 57) is denied to the extent the plaintiff seeks to add an alter ego theory of liability and is otherwise granted.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

16

Dated:     New York, New York
           October 19, 2016

Copies transmitted via ECF this date:

Kevin P. McCulloch, Esq.
Nathaniel A. Kleinman, Esq.
Nelson & McCulloch LLP
155 East 56th Street
New York, NY 10022

Harris N. Cogan, Esq.
Louis Brucculeri, Esq.
Andrew T. Hambelton, Esq.
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174

John F. Carberry, Esq.
William N. Wright, Esq.
Cummings & Lockwood LLC
Six Landmark Square
Stamford, CT 06901

Ira S. Sacks, Esq.
Jamie B. Shyman, Esq.
Akerman LLP
666 Fifth Avenue 20th Floor
New York, NY 10103